## REETZ *v.* MICHIGAN.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 143. Argued January 21, 1903.—Decided February 23, 1903.

A State has power to make reasonable provisions for determining the qualifications of those engaged in the practice of medicine and for punishing those who attempt to engage therein in defiance of such statutory provisions.

Act No. 237 of Michigan of 1889 creating a board of registration in medicine is not in conflict with the provisions of the Fourteenth Amendment.

There is no provision in the Federal Constitution forbidding the State from granting to a tribunal, whether called a court or a board of registration, the final determination of a legal question. Due process of law is not necessarily judicial process, nor is the right of appeal essential to due process of law.

When a statute fixes the time and place of meeting of any board or tribunal no special notice to parties interested is required to constitute due process of law as the statute itself is sufficient notice.

A state statute requiring the registration of physicians and prohibiting those who are not so registered from practicing thereafter is not an *ex post facto* law as to a physician who had once engaged in practice, but who was held not to be qualified and whose registration was refused by the board of registration appointed under the statute, such statute not providing any punishment for his having practiced prior to the enactment thereof.

ACT No. 237 of the public acts of the State of Michigan (1899) directed the appointment of "a board of registration in medicine," to hold two regular meetings at specified times in each year at the state capitol, and additional meetings at such times and places as it might determine; required all persons engaging in the practice of medicine and surgery to obtain from such board a certificate of registration; prescribed the conditions

upon which such certificate should be granted, and forbade, under penalty, the practice of medicine or surgery without such certificate. The conditions above referred to were either a satisfactory examination, or the possession of " a diploma from any legally incorporated, regularly established and reputable college of medicine, . . . having at least a three years' course of eight months in each year, or a course of four years of six months in each year, . . . as shall be approved and designated by the board of registration," with a proviso that " the board of registration shall not register any person by reason of a diploma from any college which sells, or advertises to sell, diplomas ' without attendance,' nor from any other than a regularly established and reputable college." Another provision was that an applicant should be given a certificate of registration if he should " present sufficient proof within six months after the passage of this act of his having already been legally registered under Act No. 167 of 1883, as amended in 1887, entitled ' An act to promote public health.'" The plaintiff in error was prosecuted and convicted in the Circuit Court for the county of Muskegon of a violation of this statute, which conviction was affirmed by the Supreme Court of the State, 127 Michigan, 87, to reverse which ruling this writ of error was sued out.

*Mr. William B. Belden* for plaintiff in error. *Mr. Edwin A. Burlingame* and *Mr. Jesse F. Orton* were on the brief.

*Mr. Charles B. Cross* and *Mr. Charles A. Blair* for defendant in error. *Mr. Horace M. Oren* and *Mr. George S. Lovelace* were on the brief.

Mr. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The power of a State to make reasonable provisions for determining the qualifications of those engaging in the practice of medicine and punishing those who attempt to engage therein in defiance of such statutory provisions, is not open to question. *Dent* v. *West Virginia*, 129 U. S. 114; *Hawker* v. *New York*, 170 U. S. 189, and cases cited in the opinion ; *The State ex rel. Burroughs* v. *Webster*, 150 Indiana, 607, and cases cited.

It is objected in the present case that the board of registration is given authority to exercise judicial powers without any appeal from its decision, inasmuch as it may refuse a certificate of registration if it shall find that no sufficient proof is presented that the applicant had been "legally registered under act No. 167 of 1883." That, it is contended, is the determination of a legal question which no tribunal other than a regularly organized court can be empowered to decide. The decision of the state Supreme Court is conclusive that the act does not conflict with the state constitution, and we know of no provision in the Federal Constitution which forbids a State from granting to a tribunal, whether called a court or a board of registration, the final determination of a legal question. Indeed, it not infrequently happens that a full discharge of their duties compels boards, or officers of a purely ministerial character, to consider and determine questions of a legal nature. Due process is not necessarily judicial process. *Murray's Lessee* v. *Hoboken Land & Improvement Company*, 18 How. 272; *Davidson* v. *New Orleans*, 96 U. S. 97; *Ex parte Wall*, 107 U. S. 265, 289; *Dreyer* v. *Illinois*, 187 U. S. 71, 83; *People* v. *Hasbrouck*, 11 Utah, 291. In the last case this very question was presented, and in the opinion, on page 305, it was said:

"The objection that the statute attempts to confer judicial power on the board is not well founded. Many executive officers, even those who are spoken of as purely ministerial officers, act judicially in the determination of facts in the performance of their official duties; and in so doing they do not exercise 'judicial power,' as that phrase is commonly used, and as it is used in the organic act, in conferring judicial power upon specified courts. The powers conferred on the board of medical examiners are nowise different in character in this respect from those exercised by the examiners of candidates to teach in our public schools, or by tax assessors or boards of equalization in determining, for purposes of taxation, the value of property. The ascertainment and determination of qualifications to practice medicine by a board of competent experts, appointed for that purpose, is not the exercise of a power which appropriately belongs to the judicial department of the government."

In *Hurtado* v. *California*, 110 U. S. 516, Mr. Justice Matthews, speaking for the court, discussed at some length and with citation of many authorities the essential elements of due process of law, and summed up the conclusions in these words (p. 537):

" It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law."

Neither is the right of appeal essential to due process of law.. In nearly every State are statutes giving, in criminal cases of a minor nature, a single trial, without any right of review. For nearly a century trials under the Federal practice for even the gravest offences ended in the trial court, except in cases where two judges were present and certified a question of law to this court. In civil cases a common rule is that the amount in controversy limits the entire litigation to one court, yet there was never any serious question that in these cases due process of law was granted.

In *Pittsburgh &c. Railway Company* v. *Backus*, 154 U. S. 421, upon the question whether the right of appeal was essential to the validity of a taxing statute, we said (p. 427):

" Equally fallacious is the contention that, because to the ordinary taxpayer there is allowed not merely one hearing before the county officials, but also a right of appeal with a second hearing before the state board, while only the one hearing before the latter board is given to railroad companies in respect to their property, therefore the latter are denied the equal protection of the laws. If a single hearing is not due process, doubling it will not make it so."

In *McKane* v. *Durston*, 153 U. S. 684, 687, this court declared that " a review by an appellate court of the final judgment in a criminal case, however grave the offence of which the accused is convicted, was not at common law and is not now a necessary element of due process of law." See also *Andrews* v. *Swartz*, 156 U. S. 272.

But while the statute makes in terms no provision for a re-

view of the proceedings of the board, yet it is not true that such proceedings are beyond investigation in the courts. In *Metcalfe v. State Board of Registration*, 123 Michigan, 661, an application for mandamus to compel this board to register the petitioner was entertained, and although the application was denied, yet the denial was based not upon a want of jurisdiction in the court but upon the merits.

It is further insisted that it is essential to a judicial or quasi-judicial proceeding that it should give a person accused or interested the benefit of a hearing, and that there is in this statute no special provision for notice, or hearing, or authority to summon witnesses or to compel them to testify. The statute provides for semi-annual meetings at specified times at the state capital, but the plaintiff in error did not appear at any of these meetings or there present an application for registration or showing of his right thereto; he simply sent to the secretary of the board a certified copy of his registration under the prior statute, and his diploma from the Independent Medical College of Chicago, Illinois. The latter was returned with a notice from the board that it had denied the application for registration. When a statute fixes the time and place of meeting of any board or tribunal, no special notice to parties interested is required. The statute is itself sufficient notice. If plaintiff in error had applied at any meeting for a hearing the board would have been compelled to grant it, and if on such hearing his offer of or demand for testimony had been refused, the question might have been fairly presented to the state courts to what extent the action of the board had deprived him of his rights.

He seems to assume that the proceedings before the board were in themselves of a criminal nature, and that the State by such proceedings was endeavoring to convict him of an offence in the practice of his profession. But this is a mistake. The State was simply seeking to ascertain who ought to be permitted to practice medicine or surgery, and criminality arises only when one assumes to practice without having his right so to do established by the action of the board. The proceedings of the board to determine his qualifications are no more criminal than examinations of applicants to teach or practice law, and if the

provisions for testing such qualifications are reasonable in their nature, a party must comply with them, and has no right to practice his profession in defiance thereof.

It is further insisted that having once engaged in the practice and having been licensed so to do, he had a right to continue in such practice, and that this statute was in the nature of an *ex post facto* law.. The case of *Hawker* v. *New York, supra,* is decisive upon this question. This statute does not attempt to punish him for any past offence, and in the most extreme view can only be considered as requiring continuing evidence of his qualifications as a physician or surgeon. As shown in *Dent* v. *West Virginia, supra,* there is no similarity between statutes like this and the proceedings which were adjudged void in *Cummings* v. *Missouri,* 4 Wall. 277, and *Ex parte Garland,* 4 Wall. 333.

We fail to see anything in the statute which brings it within the inhibitions of the Federal Constitution, and therefore the judgment of the Supreme Court of Michigan is

*Affirmed.*

Mr. Justice Harlan concurs in the result.