421 F.2d 619
 Adolfo PEREZ and Emma Perez, husband and wife, and Emma
Perez for her separate self, Appellants,
v.
David H. CAMPBELL, Superintendent, Motor Vehicle Division,
Arizona HighwayDept., etc., et al., Appellees.
 No. 23463.
 United States Court of Appeals, Ninth Circuit.
 Jan. 26, 1970, Rehearing Denied Feb. 18, 1970.
 
 Winton D. Woods, Jr., Tucson, Ariz. (argued), Anthony B. Ching (argued), Legal Aid Society, Tucson, Ariz., for appellants.
 Robert H. Schlosser (argued), Asst. Atty. Gen., Gary K. Nelson, Atty. Gen., State of Arizona, for appellees.
 Before CHAMBERS, CARTER and KILKENNY, Circuit Judges.
 KILKENNY, Circuit Judge:
 
 
 1
 In the District Court, the appellants challenged the constitutionality of certain Arizona statutes, sought to convene a three-judge court[1] and attempted to secure a preliminary injunction against appellees. The District Court concluded that the unconstitutional claims were obviously insubstantial and that the appellants' complaint failed to state a claim upon which relief could be granted. It denied the request for a three-judge court and dismissed the complaint. We affirm.
 
 
 2
 On July 8, 1965, Adolfo Perez was involved in an accident in his home state of Arizona. At the time, he was driving alone in an automobile registered in his name, but owned by the community Adolfo Perez and Emma Perez, husband and wife, the appellants. Later, in the Arizona Court, the occupants of the other automobile instituted an action against appellants for damages sustained in the accident. Appellants appeared in that action and confessed judgment for approximately $2,450.00. Adolfo's driver's license, and his automobile registration, were thereafter suspended by reason of his failure to carry the liability insurance required under the provisions of ARS 28-1142. Subsequently, the appellants filed separate petitions in bankruptcy and each was adjudicated a bankruptcy. The confessed judgment was scheduled by each of the bankrupts. Appellants were thereafter duly discharged.
 
 
 3
 At a later date, the appellants were served with a notice by the Arizona Highway Department that their drivers' licenses, as well as motor vehicle registration, had been suspended pursuant to the provisions of ARS 28-1162, subsec. A.[2] ARS 28-1163, subsec. B provides, among other things, that a discharge in bankruptcy does not relieve a judgment debtor from the effect of ARS 28-1162, subsec. A. Appellants allege that the suspension of their drivers' licenses and motor vehicle registration has caused them, and their family, a great handship. ARS 28-1165 permits the payment of this type of judgment in installments and, as long as payments thereunder are not in default, the drivers' licenses and motor vehicle registration of the judgment debtors may be returned and retained by them. Appellants have attempted to make an arrangement between the parties for payment of the judgment in installments, but no agreement has thus far been reached.
 
 APPELLANTS' CONTENTIONS
 
 4
 Appellants' contentions, briefly stated, are as follows:
 
 
 5
 (1) That, as applied to appellants, ARS 28-1163, subsec. B is in conflict with Section 17 of the Bankruptcy Act, 11 U.S.C. 35, and thus violates the supremacy clause of the United States Constitution.
 
 
 6
 (2) That ARS 28-1162, subsec. A, separately, and when read in connection with ARS 28-1163, subsec. B, violates the due process and equal protection clauses of the Constitution, as imposed on the states by the Fourteenth Amendment.
 
 
 7
 (3) That the challenged statutes violate the Thirteenth Amendment to the Constitution, which prohibits involuntary servitude.
 
 
 8
 (4) That the challenged statutes constitute a bill of attainder prohibited by Article I, Section Ten of the United States Constitution.
 
 
 9
 The first issue has been decided against appellants in Kesler v. Dept. of Public Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962) and Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941). Appellants ask us to reexamine these cases. Aside from our duty to follow Supreme Court decisions, we believe that the cases are sound.
 
 
 10
 In our view, all contentions of appellant, Adolfo Perez, have been answered against him by Kesler v. Dept. of Public Safety, supra, and Reitz v. Mealey, supra. The differences between the Utah statute involved in Kesler and the New York statute under scrutiny in Reitz and the challenged Arizona statute are so slight that we view them as de minimis non curat lex. For that matter, the requirements of the Arizona statutes are considerably less open to question than those under challenge in Kesler and Reitz. Inherent in the Supreme Court disposition of both Kesler and Reitz are rulings adverse to the equal protection, due process and other constitutional arguments of appellant, Adolfo Perez.
 
 
 11
 Aside from the decisions in Kesler and Reitz, a number of responsible courts have spoken on the subject and have held that financial responsibility laws, such as the one here in question, are not violative of the equal protection clause of the Fourteenth Amendment. The bellwether of this group dealing with the legislation before us is Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963). Schecter, in overruling Goodwin v. Superior Court, 68 Ariz. 108, 201 P.2d 124 (1948), holding that a license to operate a motor vehicle was a mere privilege, and not a property right, went on to hold that the provisions of the Arizona Financial Responsibility Act requiring the posting of security did not constitute deprivation of equal protection of the law in its application only to uninsured drivers who had been so unfortunate as to have been in an accident.
 
 
 12
 Financial responsibility laws, such as the Arizona statutes before us, do not unconstitutionally discriminate against the poor. Moreover, Schecter teaches that the provisions of the Arizona legislation, designed to provide security against uncompensated damages, is not violative of substantive due process. Although Kesler is not cited in Schecter, he logic there employed follows the same general pattern. No one questions that one of the principal purposes of financial responsibility acts is the protection of the public using the highways from financial hardship which might result by the negligent use of automobiles by financially irresponsible persons. That object is accomplished by requiring proof of financial responsibility by those involved in an accident either by the showing of insurance which covers the accident or requiring a bond or a deposit of cash or other securities. Incident to one of its principal purposes, by reason of threat of loss of driving rights following an uninsured accident, the legislation tends to encourage operators of motor vehicles to obtain liability insurance and to invite drivers to drive more carefully. The latter, however, are not the primary objectives of this legislation. The Arizona Court correctly rejected the constitutional challenges of lack of due process and equal protection of the laws. The fact that a person may be poor and unable to furnish financial security or pay a judgment growing out of his conduct on the highways does not guarantee that person a right to drive. Here, we should mention, as was emphasized in Kesler, the fact that the Arizona legislation permits the judgment debtors to pay the judgments in installments. While we are not governed by state decisions interpreting the United States Constitution, there is no rule against following those decisions when they are patterned after those in the Federal Courts.
 
 APPEAL OF EMMA PEREZ
 
 13
 Mrs. Perez argues that the automobile was registered in her husband's name, he was the negligent driver and, although the automobile was community property[3] and she, as a member of the community, confessed judgment that, nevertheless, the decisive logic of Kesler and Reitz should be confined to the driver of the automobile, such as her husband. She reasons that the rules stated in those cases should not be applied to an innocent wife who had no connection whatesoever with the conduct which was responsible for confession and entry of the judgment. There is a distinction. But it is a distinction without a significant difference. When she confessed judgment with her husband, she conceded her financial responsibility for the amount of the judgment.' Under Arizona law, she had no alternative. Donato v. Fishburn, 90 Ariz. 210, 367 P.2d 245 (1961).
 
 
 14
 Starting with the fundamental premise that ownership of the vehicle was in the community of husband and wife and that Mrs. Perez' ownership was equal to her husband's, subject to her husband's right to administer the property, Mortensen v. Knight, 81 Ariz. 325, 305 P.2d 463 (1956), we now explore Mrs. Perez' principal contention. She says she had nothing to do with the negligent driving of her husband. On the record before us that fact must be conceded. Moreover, she argues that her confession of judgment affects only her interest in the automobile and other community property. This status, she argues, should not lead to a forfeiture of her driver's license. In arriving at a proper result, we must take judicial notice of the fact that large numbers of the motor vehicles are driven on the Arizona highways are community property. The husband or the wife, if each so desired, could purchase an automobile with separate funds and in such case the automobile would be the separate property of the purchaser. The negligent operation of such an automobile on separate business would not call into question the liability of the other spouse, nor the cancellation of the latter's license. The judgment entered in such a case would be against the spouse operating the vehicle or someone operating it with his authority.
 
 
 15
 It seems to us that Mrs. Perez' legal status, on the facts before us, is closely analogous to that of an automobile owner who permits another to drive it. If the driver is negligent, judgment is entered against both the driver and the owner, or the owner alone. The financial responsibility laws have been uniformly applied against the owner under these circumstances. The parent case on this line of authority seems to be In re Opinion of Justices, 251 Mass. 569, 147 N.E. 681 (1925), where the Supreme Judicial Court of Massachusetts explored the problem under that state's compulsory motor vehicle insurance act. It was there held that the extension of liability of the owner of a motor vehicle so as to include personal injuries caused by it, while being negligently operated with the owner's express or implied consent, even though not by himself, his servant or agent, violates no constitutional requirement. The Court held that such an extension of liability and the requirements for security by the owner of a motor vehicle for compensation of personal injuries caused by it, do not differ in principle from the civil liability act affording remedies to those injured by an intoxicated person against the person who caused such intoxication in whole or in part by sale or gift of intoxicating liquor. The Court then goes on to say that the general principle which sustains this type of legislation is that, when the general welfare of travelers on the highway, in the opinion of the legislature, is threatened by and demands protection against a specific evil, any rational means may be employed to remedy that evil.
 
 
 16
 The logic of the Massachusetts court was used to reach the same conclusion in Watson v. State Division of Motor Vehicles, 212 Cal. 279, 298 P. 481 (1931). The Arizona Supreme Court also employed the Massachusetts decision in reaching its conclusion in State ex rel. Sullivan v. Price, 49 Ariz. 19, 63 P.2d 653, 108 A.L.R. 1156 (1937).
 
 
 17
 More in point is Sheehan v. Division of Motor Vehicles, 140 Cal.App. 200, 35 P.2d 359 (1934), rehearing den. August 20, 1934, hearing den., Supreme Court, September 24, 1934, holding valid a statute permitting cancellation of a driver's license when the licensee was unable to pay a judgment. There, a judgment was entered against both husband and wife for damages suffered in a highway accident where the husband was driving the automobile. The judgment against her was sought and secured solely on the ground that she was the owner of the automobile in question. There, as here, the judgment debtors were unable to satisfy the judgment in whole or in part. On failure to satisfy the judgment, the judgment certificates licenses and registration certificates were revoked. There is a striking similarity between the California statute involved in that case and the one here before us. There, as here, the question presented was whether the wife's license should be revoked inasmuch as the judgment was entered against her solely by reason of her ownership of the automobile and not by reason of any negligence on her part in operating it. The California court answered in the affirmative. We approve the statement in that case that most of the reasons for revocation of a license applying to the operator of a motor vehicle, also apply to an owner who permits his vehicle to be operated under conditions which make him liable to another.
 
 
 18
 The following cases, among others, invoke the same legal principles and uphold the state's right to revoke the driver's license and the car registration after judgment has been entered against the owner and remains unsatisfied. Continental Cas. Co. v. Phoenix Constr. Co., 46 Cal.2d 423, 296 P.2d 801, 57 , A.L.R.2d 914 (1956); State v. Price, supra; Reitz v. Mealey, supra: Sullins v. Butler, 175 Tenn. 468, 135 S.W.2d 930 (1940); Nulter v. State Road Comm'n., 119 W.Va. 312, 193 S.E. 549, 194 S.E. 270 (1937); Gillaspie v. Dept. of Public Safety, 152 Tex. 459, 259 S.W.2d 177 (1953), cert. den. 347 U.S. 933, 74 S.Ct. 625, 98 L.Ed. 1084; State v. Stehlek, 262 Wis. 642, 56 N.W.2d 514 (1953); Escobedo v. State Dept. of Motor Vehicles, 35 Cal.2d 870, 222 P.2d 1 (1950); Annot., 35 A.L.R.2d 1011 (1954).
 
 
 19
 Can we logically distinguish Escobedo, and other cases of like tenor, from the case before us? Simply stated, a valid distinction does not exist. In Escobedo, the wife was the owner of the automobile, permitting her husband to drive the vehicle on the California highways. Here, the wife is the owner of her community interest in the automobile. The statutory and decisional law of Arizona make the husband what might be termed the managing agent of the wife in the control of the community automobile. We might well say that the Arizona community property law was written into and became part of the marriage contract between appellants. Moreover, Mrs. Perez' driver's license is not a right which is entirely separate and distinct from the community. With married couples in Arizona, the driver's licenses of both husband and wife are an integral part of the ball of wax, which is the basis of the Arizona community property laws. Although issued to the individuals, the licenses grant permission to drive community vehicles where a husband and wife are concerned. The fact, if it be a fact, that Mrs. Perez could not use the community property to purchase casualty insurance is beside the point. Her driver's license was issued subject to the financial responsibility law. The loss of her driver's license is the price an Arizona wife must pay for negligent driving by her husband of the community vehicle, provided, that neither she, her husband, nor the community pay the damages, established by judgment, flowing from the husband's negligent acts. In these circumstances, the police power of the state to exercise proper control over reckless, wrongful driving on its highways overbalances the wife's right to retain her license. It is our considered judgment thta the legislation in question bears a real and a substantial relationship to public safety on the Arizona highways. Since Mrs. Perez cannot provide proof of that responsibility, she is no longer entitled to drive on the highways. Of course, arrangements can still be made to pay the judgment in installments.
 
 Three-Judge Court
 
 20
 We agree with the trial judge that the claims of unconstitutionality are unsubstantial within the meaning of the rule stated in Ex Parte Buder,271 U.S. 461, 46 S.Ct. 557, 70 L.Ed. 1036 (1926), as analyzed and approved in Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).
 
 
 21
 Other contentions raised by the appellants have received our consideration.[4] We find them without substance.
 
 
 22
 Affirmed.
 
 
 
 [1]
 28 U.S.C. 2281
 
 
 [2]
 ARS 28-1162, subsec. A:
 'The superintendent upon receipt of a certified copy of a judgment, shall forthwith suspend the license and registration and nonresident operating privilege of a person against whom the judgment was rendered, except as otherwise provided in this section and 28-1165.'
 
 
 [3]
 ARS 25-211
 
 
 [4]
 The problems rising from a divorce of the parties or death of the husband are not before us